UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

DENISE MATIAS,

               Plaintiff,

     vs.

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY;

              Defendant.

CIV. NO. 19-00575 LEK-KJM

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION IN PART; AND REMANDING THE CASE IN PART FOR FURTHER ADMINISTRATIVE PROCEEDINGS REGARDING PLAINTIFF'S APPLICATION FOR SUPPLEMENTAL SECURITY INCOME**

Before the Court is Plaintiff Denise Matias's ("Plaintiff") Complaint for Review of Social Security Disability and Supplemental Security Income Benefits Determinations, filed on October 23, 2019, [dkt. no. 1,] in which she appeals Administrative Law Judge Jeffrey Hatfield's ("ALJ") September 6, 2018 Decision ("Appeal").  The ALJ issued the Decision after conducting a hearing on June 19, 2018 in Hilo, Hawai`i. [Administrative Record ("AR") at 18 (dkt. no. 11-3 at PageID #: 52).[1]]  The ALJ ultimately concluded that Plaintiff was not disabled, for purposes of the Social Security Act, from

---

[1] The Decision, including the Notice of Decision - Unfavorable and the List of Exhibits, is AR pages 15-35.  [Dkt. no. 11-3 at PageID #: 49-69.]

December 1, 2014 through the date of the Decision.  [Decision,
AR at 27 (dkt. no. 11-3 at PageID #: 61).]

      On May 28, 2020, Plaintiff filed her Opening Brief.
[Dkt. no. 16.]  Defendant Andrew Saul, Commissioner of Social
Security ("the Commissioner"), filed his Answering Brief on
July 16, 2020, and Plaintiff filed her Reply Brief on August 9,
2020.  [Dkt. nos. 18, 20.]  The Court finds this matter suitable
for disposition without a hearing pursuant to Rule LR7.1(c) of
the Local Rules of Practice for the United States District Court
for the District of Hawaii ("Local Rules").  Plaintiff's Appeal
is granted in part and denied in part.  The Appeal is denied,
insofar as the ALJ's Decision is affirmed as to the denial of
Plaintiff's application for social security disability insurance
benefits, and the Appeal is granted, insofar as the case is
remanded to the Appeals Council for further proceedings
regarding Plaintiff's application for supplemental security
income.

## BACKGROUND

      On April 2, 2015, Plaintiff protectively filed a
Title II application for social security disability insurance
("SSDI") benefits and a Title XVI application for supplemental
security income ("SSI").  Both applications alleged a disability
onset date of December 1, 2014.  The applications were denied
initially on October 23, 2015, and upon reconsideration on

2

September 8, 2016.  On October 6, 2016, Plaintiff filed a
written request for a hearing.  At the June 19, 2018 hearing
before the ALJ, Plaintiff was represented by a non-attorney
representative.  Plaintiff and a vocational expert, Lanelle S.
Yamane, testified at the hearing.  [Decision, AR at 18 (dkt.
no. 11-3 at PageID #: 52).]  The ALJ found that Plaintiff was
insured for purposes of the Social Security Act through June 30,
2015.  Thus, for her SSDI application, Plaintiff was required to
establish that her disability began on or before that date.
[Id. at 18, 20 (dkt. no. 11-3 at PageID #: 52, 54).]

          At the hearing, Plaintiff testified that she worked as
a cashier at Subway until 2009, when she had quit because of
joint pain in her hands and because she had a hard time cutting
bread.  While she was working at Subway, Plaintiff had to ask
for extra breaks so that she could sit down.  She testified that
she last worked in 2011 as a caregiver.  She ultimately stopped
working because of the joint pain in her right wrist and
arthritis in her right knee.  At the time of the hearing,
Plaintiff had chronic lower back pain and pain in both wrists,
as well as in her fingers and shoulders.  [Id. at 22 (dkt.
no. 11-3 at PageID #: 56).]

In the first step of the five-step sequential analysis used to determine whether a claimant is disabled,[2] the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date.  [Id. at 20 (dkt. no. 11-3 at PageID #: 54).]

At step two, the ALJ found that Plaintiff had "the following severe impairments: status post total right knee arthroplasty; bilateral hearing loss; osteoarthritis in the right wrist and right hand; right de Quervain's tenosynovitis;[3] right carpal tunnel syndrome; and chronic pain syndrome."  [Id. (citations omitted).]  In addition, the ALJ found that Plaintiff the following other impairments that were not considered to be severe: "left posterior thigh cyst, right 3rd toe infection, right hallux rigidus and left hammer toe, treated periodically and mostly with medications and without attendant exam findings and signs correlating with any ongoing, significant functional restrictions," as well as other unrelated complaints.  [Id. at 21 (dkt. no. 11-3 at PageID #: 55).]

---

[2] See, e.g., Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2015), amended (Feb. 5, 2016), for a description of the five-step analysis.

[3] De Quervain tenosynovitis is "inflammation of the tendons of the first dorsal compartment of the wrist."  De Quervain tenosynovitis, Stedmans Medical Dictionary 902190 (Nov. 2014).

At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Id.]  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> she can lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk 6 hours out of an 8-hour day and sit 6 hours in an 8-hour day, except for occasional use of stairs but never ropes, ladders or scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; frequent gross handling and fine fingering with the right upper extremity; moderate limitation in hearing that is, no work around loud noises such as construction sites and large auditoriums, but other settings like general/business offices, museums, and department and grocery stores would be permitted; and must avoid concentrated exposure to hazardous machinery and unprotected heights.

[Id.]  In so ruling, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  [Id. at 22 (dkt. no. 11-3 at PageID #: 56).]

Plaintiff's medical records confirmed that Plaintiff had osteoarthritis in her right knee and a history of degenerative arthritis in her right knee.  However, July 2015

reports and an August 31, 2015 examination suggested that her symptoms were not as severe as she reported them to be. [Id.] "Objective imaging of the right knee on April 11, 2014, July 8, 2015, August 5, 2015, August 27, 2015, January 26, 2016 and February 18, 2016 showed advanced tricompartmental degenerative joint disease, for which the claimant underwent a right total knee arthroplasty on March 16, 2016[.]" [Id. at 22-23 (dkt. no. 11-3 at PageID #: 56-57).] In addition, a June 10, 2014 x-ray confirmed her report of osteoarthritis in her right wrist, but, on September 17, 2014, Plaintiff reported that she was planning to travel to Honolulu to care for her grandmother for a few weeks. On October 29, 2014 and May 14, 2015, Plaintiff reported improvement after treatments. [Id. at 23 (dkt. no. 11-3 at PageID #: 57).] "[M]ild right carpal tunnel syndrome" was evident in a November 16, 2016 study, and the ALJ discussed treatment that Plaintiff received thereafter. [Id.] A May 10, 2018 audiogram "show[ed] severe left and moderately severe right hearing loss." [Id. at 24 (dkt. no. 11-3 at PageID #: 58).]

> The ALJ also noted:
>
> Clinic assessments included chronic pain syndrome, for which she was prescribed Ibuprofen and Hydrocodone. Still, there are no signs of atrophy or disuse in the extremities, and there is other evidence that she retains substantial manipulative function. She reported that she could cook, clean and work on the computer, at

6

Exhibits 16E and 21E,[4] which involve a fair
amount of dexterity and movement.  Despite her
complaints of chronic pain, the treating records
document, apart from her right knee surgery,
years of conservative treatment mostly with
medications and occasional injection therapy.
She also testified she could bathe herself,
though leaning on the walls while showering, and
she could dress herself, though she stated doing
so while seated.  She could prepare simple meals,
though stating she has to sit down.  She
testified she does shop from time to time, and
uses a cart to lean on, if needed, as she pushes
it, and she asks for help to pick out something,
if it is too heavy.  She denied using an
assistive device like a cane or walker.

[Id.]

As for the opinion evidence, the ALJ gave "significant

weight" to the state agency consulting physicians, who opined

that Plaintiff was capable of light work, with some limitations.

[Id. (citing Exhs. 10A, 11A, 14A, 15A).[5]]  The ALJ gave "limited

---

4 Exhibit 16E is the Function Report – Adult, signed by
Plaintiff on June 18, 2015.  [AR at 527-46 (dkt. no. 12-3 at
PageID #: 569-88).]  Exhibit 21E is the Function Report – Adult,
signed by Plaintiff on February 22, 2016.  [AR at 567-76 (dkt.
no. 12-3 at PageID #: 609-18).]
5 Exhibit 10A is Plaintiff's initial Disability
Determination Explanation ("Initial DDE"), signed on October 21
and 23, 2015.  [AR at 275-84 (dkt. no. 11-5 at PageID #: 311-
20).]  Exhibit 11A is substantively identical, but Exhibit 10A
is for the SSDI claim and Exhibit 11A is for the SSI claim.  [AR
at 285-94 (dkt. no. 11-5 at PageID #: 321-30).]  Exhibit 14A is
Plaintiff's reconsideration Disability Determination Explanation
("Reconsideration DDE"), signed on September 8, 2016.  [AR at
297-311 (dkt. no. 11-5 at PageID #: 333-47).]  Exhibit 15A is
substantively identical, but Exhibit 14A is for the SSI claim
and Exhibit 15A is for the SSDI claim.  [AR at 312-26 (dkt.
no. 11-5 at PageID #: 348-62).]

weight" to the opinion of Dr. Christopher Taylor, the examining state physician, because Dr. Taylor examined Plaintiff in March 2016, which was prior to Plaintiff's knee surgery and prior to much of the treatments that she received for her issues with her right upper extremities.  [Id. at 25 (dkt. no. 11-3 at PageID #: 59) (citing Exhs. 16F, 22F).[6]]  The ALJ gave "little weight" to the opinions of Samantha Rossi, P.T., D.P.T., as an "other source," because "she offered only generalized limitations, without reference to supporting medical findings, and appear[ed] primarily based on [Plaintiff]'s subjective complaints."  [Id. (citing Exh. 31F).[7]]  The ALJ gave "minimal weight" to all opinions that were given prior to the alleged onset date.  [Id.] Thus, the ALJ found that Plaintiff's RFC was "supported by the medical and other evidence, and the medical opinions as each weighed above, and the range of [Plaintiff]'s activities of

---

[6] Exhibit 16F and 22F are two sets of documents from the State of Hawai`i Department of Human Services ("DHS") related to Plaintiff's evaluations in connection with her application for benefits.  [AR at 959-1000 (dkt. no. 13-2 at PageID #: 1005-46); AR at 1112-44 (dkt. no. 13-3 at PageID #: 1159-91).]  Exhibit 16F includes the Physical Examination Report by Christopher Taylor, M.D., for March 1, 2014 and November 7, 2015 examinations of Plaintiff.  [AR at 980-82, 961-63 (dkt. no. 13-2 at PageID #: 1026-28, 1007-09).]  Exhibit 22F includes the Physical Examination Report by Dr. Taylor for a March 5, 2016 examination of Plaintiff.  [AR at 1141-43 (dkt. no. 13-3 at PageID #: 1188-90).]

[7] Exhibit 31F is a one-page letter from Ms. Rossi, dated April 10, 2017, addressed "To Whom It May Concern."  [AR at 1280 (dkt. no. 14-1 at PageID #: 1330).]

daily living" because the medical evidence did "not substantiate significant, ongoing problems that she described, including with regard to the neck, back or shoulders," and "the record as a whole does not substantiate an inability to perform all work, as she has alleged." [Id. at 25-26 (dkt. no. 11-3 at PageID #: 59-60).]

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a fast food worker, sandwich maker, and lunchroom counter attendant, either as those jobs were actually performed or as they are generally performed in the economy. [Id. at 26 (dkt. no. 11-3 at PageID #: 60).]

At step five, the ALJ found that Plaintiff was a "younger individual" on the alleged onset date, but she had since become a person "closely approaching advanced age." [Id. (citing 20 C.F.R. §§ 404.1563, 416.963).] Plaintiff had at least a high school education and could communicate in English. [Id.] In light of these findings, Plaintiff's work experience, and her RFC, the ALJ found that Plaintiff could perform the occupations of cashier II, sales attendant, and café attendant. Further, there were significant numbers of these jobs in the national economy, and Plaintiff had the ability to adjust successfully to those occupations. [Id. at 26-27 (dkt. no. 11-3 at PageID #: 60-61).] The ALJ therefore found that Plaintiff

was not disabled from the alleged onset date through the date of the Decision.  [Id. at 27 (dkt. no. 11-3 at PageID #: 61).]

Plaintiff requested review of the Decision, but the Appeals Council denied review on August 22, 2019.  [Exh. 17B, AR at 406 (Request for Review of Hearing Decision/Order, dated 10/31/18) (dkt. no. 12-2 at PageID #: 445); AR at 1-7 (Notice of Appeals Council Action, with attachments) (dkt. no. 11-3 at PageID #: 35-41).]  Thus, the Decision is the final decision of the Commissioner.  [AR at 1 (dkt. no. 11-3 at PageID #: 35).] The Appeals Council stated:

> You submitted medical evidence from Liza Maniquis-Smigel, M.D., Samantha Rossi, P.T. D.P.T., North Hawaii Community Hospital, Thomas C. Owens, M.D., Hawaii Department of Human Services, Kuakini Health System, and Hamakua Health Center, May 30, 2013 through February 7, 2018, (149 pages).  This evidence is not new because it is a copy of Exhibits 11F, 12F, 18F, 20F, 21F, 22F, 23F, 25F, 30F, 33F, and 34F.  We did not exhibit this evidence.
>
> You also submitted medical reports from Hawaii Department of Human Services, dated June 15, 2016 through September 14, 2018 (28 pages).  We find this evidence does not show a reasonable probability that it would change the outcome of the decision.  We did not exhibit this evidence.

AR at 2 (dkt. no. 11-3 at PageID #: 36); see also AR at 119-212 (medical evidence submitted to the Appeals Council) (dkt. no. 11-4 at PageID #: 154-247).[8]

In the instant Appeal, Plaintiff argues the new evidence submitted to the Appeals Council "showed a distinct worsening of [her] pain and ability to function" and it was "the only medical opinions from September 21, 2016 onward." [Opening Brief at 1 (citations omitted).]  Plaintiff argues there was "a reasonable probability" that the additional medical evidence would have changed the outcome of her case, and she asks this Court to remand the case to the ALJ for consideration of the additional evidence.  [Id. at 2 (citing Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1231-32 (9th Cir. 2011)).[9]]

## DISCUSSION

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of

---

[8] Plaintiff states the DHS medical reports from 2016 through 2018 are "medical examinations and opinions from [Walter] Wang[, M.D.,] at [DHS] covering the last two years of her period of disability . . . ."  [Opening Brief at 1 (citing AR at 121-37, 148-52).]  Dr. Wang's Physical Examination Reports from 2016-2018, and the DHS determination forms based thereon, [AR at 121-37, 148-52 (dkt. no. 11-4 at PageID #: 156-72, 183-87),] will be referred to as "the Additional Medical Records."

[9] Taylor has been superseded by regulation on other grounds. See Vega v. Colvin, Case No. 14cv1485-LAB (DHB), 2015 WL 7769663, at *13 (S.D. Cal. Nov. 12, 2015), report and recommendation adopted, 2015 WL 7779266 (Dec. 2, 2015).

Social Security." <u>Concannon v. Saul</u>, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), *appeal filed* (9th Cir. Apr. 21, 2020).  Further, "42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income." <u>Id.</u> at *2 n.2.  As previously stated, because the Appeals Council denied review, the ALJ's Decision is the final decision of the Commissioner.  <u>See</u> AR at 1 (dkt. no. 11-3 at PageID #: 35).  The sole issue presented in Plaintiff's current Appeal is whether the Appeals Council's treatment of the Additional Medical Records was reversible error.

> The Ninth Circuit has distinguished between evidence the Appeals Council "considered" and evidence the Appeals Council merely "looked at" to determine whether the additional evidence was incorporated into the record.  The Court explained that evidence the Appeals Council **considered** becomes part of the administrative record as "evidence upon which the findings and decision complained of are based."  <u>See</u> <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1162 (9th Cir. 2012). In contrast, where "the Appeals Council only **looked** at the evidence . . . the new evidence did not become part of the record." <u>Amor v. Berryhill</u>, 743 F. App'x 145, 146 (9th Cir. 2018) (emphasis added); <u>see also</u> <u>De Orozco v. Comm'r of Soc. Sec.</u>, 2019 WL 2641490 at *11 (E.D. Cal. June 26, 2019) (observing that the Ninth Circuit distinguished between instances where the Appeals Council formally considered evidence and made it part of the administrative record with instances where the Appeals Council only looked at the evidence).  Importantly, where the Appeals Council only looks at the evidence and it does not become part of the administrative record, the Court "may not consider it." <u>Amor</u>,

743 F. App'x at 146; see also Lowry v. Barnhart,
329 F.3d 1019, 1024 (9th Cir. 2003).

Garcia v. Saul, Case No.: 1:19-cv-1103-JLT, 2021 WL 223205, at

*3 (E.D. Cal. Jan. 22, 2021) (alteration and emphases in

Garcia).  Where a claimant seeks judicial review of the Appeals

Council's decision not to consider additional evidence, the

claimant bears the burden of showing that the Appeal Council's

decision was erroneous.  Id. (citing Amor, 743 F. App'x at 146;

Lowry, 329 F.3d at 1024).  The Appeals Council's notice in

Garcia used the same language that the Appeals Council used

regarding the Additional Medical Evidence in this case.  Compare

id. with AR at 2 (dkt. no. 11-3 at PageID #: 36).  Thus, this

Court, like the district court in Garcia, 2021 WL 223205, at *3,

construes the Appeals Council's language in this case as

indicating that the council merely looked at, and did not

consider, the Additional Medical Evidence.[10]  If Plaintiff

_____

[10] This Court acknowledges that some judges within this
district have ruled that similar Appeals Council language –
"'did not consider and exhibit this evidence'" – is insufficient
to show "to what extent the Appeals Council 'considered' or just
'looked at'" the additional evidence.  See, e.g., Vahey v. Saul,
Civ. No. 18-00350-ACK-KJM, 2019 WL 3763436, at *8-9 (D. Hawai`i
Aug  9, 2019) (discussing West v. Berryhill, Case No. 18-cv-
00092-DKW-RT, 2019 WL 362259, at *5 (D. Hawai`i Jan. 29, 2019);
Kekaula v. Berryhill, Civ. No. 17-00551 ACK-KJM, 2018 WL
3146590, at *7-8 (D. Hawai`i June 27, 2018)).  This Court
respectfully disagrees.  It is well within the Appeals Council's
ability: to look at additional evidence to determine whether the
evidence should be part of the record; but, if the council
determines the evidence is not properly before it, to decide
(. . . continued)

carries her burden to show that the Appeals Council erred in refusing to consider the Additional Medical Evidence, under 20 C.F.R. § 404.970 or 20 C.F.R. § 416.1570, the case must be remanded for further administrative proceedings.  See id. at *4 (citing Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011)).

> 20 C.F.R. § 404.970, which governs SSDI, states:
>
> (a)   The Appeals Council **will review a case** at a party's request or on its own motion if—
>
>> (1)   There appears to be an abuse of discretion by the administrative law judge or administrative appeals judge who heard the case;
>>
>> (2)   There is an error of law;
>>
>> (3)   The action, findings or conclusions in the hearing decision or dismissal order are not supported by substantial evidence;
>>
>> (4)   There is a broad policy or procedural issue that may affect the general public interest; or
>>
>> (5)   **Subject to paragraph (b)** of this section, the Appeals Council receives additional evidence that is new, material, **and** relates to the period on or before the date of the hearing decision, **and** there is a

---

whether or not to review the ALJ's decision without relying on the additional evidence.  But see West, 2019 WL 362259, at *5 ("It would seem difficult to reach such a conclusion without considering or looking at – **in some fashion** – Dr. Wang's opinions.  In light of the clarity of the Appeals Council's statement that it did **not** consider Dr. Wang's opinions, though, this Court can only speculate about what the Appeals Council meant in stating that Dr. Wang's opinions would not change the outcome of the case." (emphases in original)).

reasonable probability that the additional evidence would change the outcome of the decision.

(b)  In reviewing decisions . . . based on an application for benefits, the Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 416.1435 because:

(1)  Our action misled you;

(2)  You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3)  Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.  Examples include, but are not limited to:

(i)  You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause;

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or

(v)  You received a hearing level decision on the record and the Appeals Council reviewed your decision.

(c)  If you submit additional evidence that does
not relate to the period on or before the date of
the administrative law judge hearing decision as
required in paragraph (a)(5) of this section, or
the Appeals Council does not find you had good
cause for missing the deadline to submit the
evidence in § 404.935, the Appeals Council will
send you a notice that explains why it did not
accept the additional evidence and advises you of
your right to file a new application.  The notice
will also advise you that if you file a new
application within 6 months after the date of the
Appeals Council's notice, your request for review
will constitute a written statement indicating an
intent to claim benefits under § 404.630.  If you
file a new application within 6 months of the
Appeals Council's notice, we will use the date
you requested Appeals Council review as the
filing date for your new application.

20 C.F.R. § 404.970 (emphases added).[11]

Thus, the Appeals Council **must** consider additional

evidence that was not before the ALJ if: 1) subsection b is

satisfied, *i.e.*, good cause is shown; 2) the additional evidence

is new, material, and relates to the period up to and before the

date of the ALJ's decision; and 3) "there is a reasonable

probability" the ALJ's decision would have been different if the

ALJ had the additional evidence.  See § 404.970(a)(5), (b);

§ 416.1470(a)(5), (b); see also, e.g., Lowe v. Saul, No. 1:19-

cv-00424-GSA, 2020 WL 2571482, at *12 (E.D. Cal. May 21, 2020)

(listing requirements).  The Appeals Council's notice does not

address the first two requirements, but that does not

---

[11] The regulations governing SSI contain a substantively
identical section.  See 20 C.F.R. § 416.1470.

automatically require remand.  Because all three requirements

must be met, affirmance of the Appeals Council's ruling that

there was no "reasonable probability" that the Additional

Medical Evidence would change the outcome of the Decision would

also require affirmance of the decision not to consider the

Additional Medical Evidence.

In determining whether the Appeals Council erred in

its "reasonable probability" ruling, Plaintiff's SSDI

application and her SSI application must be distinguished.

> The onset date of a disability can be
> critical to an individual's application for
> disability benefits.  **A claimant can qualify for
> SSDI only if her disability begins by her date
> last insured**, and these benefits can be paid for
> up to 12 months before her application was filed.
> See 42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A).  In
> contrast, **a claimant is eligible for SSI once she
> becomes disabled**, but she cannot receive benefits
> for any period before her application date.  See
> 42 U.S.C. §§ 1382(c)(2), (c)(7), 1382c(a)(3)(A).
> For both programs, the onset date is the date
> when the claimant is unable to engage in any
> substantial gainful activity due to physical or
> mental impairments that can be expected to last
> for at least 12 months.  42 U.S.C.
> §§ 423(d)(1)(A), 1382c(a)(3)(A).

Wellington v. Berryhill, 878 F.3d 867, 872 (9th Cir. 2017)

(emphases added).  In determining whether "a reasonable

probability" exists, the newly submitted evidence "must . . . be

probative of the claimant's condition as it existed at the

relevant time."  Delores A. v. Berryhill, Case No. ED CV 17-254-

SP, 2019 WL 1330314, at *9 (C.D. Cal. Mar. 25, 2019) (citing Sanchez v. Sec'y, 812 F.2d 509, 511 (9th Cir. 1987)).

In this case, the ALJ found that Plaintiff's date last insured was June 30, 2015. [Decision, AR at 20 (dkt. no. 11-3 at PageID #: 54).] The Appeals Council described the Additional Medical Evidence as DHS "medial records . . . dated June 15, 2016 through September 14, 2018[.]" [AR at 2 (dkt. no. 11-3 at PageID #: 36).] In other words, the earliest record from the Additional Medical Evidence is almost a year after the date last insured. However, that fact alone is not dispositive. In a related context, one district court within the Ninth Circuit has stated:

> Medical examinations taking place after the ALJ's decision may still relate to a claimant's conditions "during the relevant time period." Handy v. Colvin, No. CV 14-02149-SH., 2014 WL 4895678, at *3 (C.D. Cal. Sept. 30, 2014). In such circumstance, the Appeals Council errs in dismissing the evidence solely because it was dated after the ALJ's decision. See id.; see also Baccari v. Colvin, No. EDCV 13-2393 RNB., 2014 WL 6065900, at *2 (C.D. Cal. Nov. 13, 2014) (that claimant submitted evidence to Appeals Council that was "generated after the ALJ's decision . . . is not dispositive of whether the evidence was chronologically relevant" and collecting cases). This is especially true when the plaintiff's condition is "chronic" or relatively "longstanding." See Baccari, 2014 WL 6065900, at *2; Bergmann v. Apfel, 207 F.3d 1065, 1070 (8th Cir. 2000) (finding that posthearing evidence required remand because it concerned deterioration of "relatively longstanding" impairment).

18

<u>Alfred G. v. Berryhill</u>, Case No. EDCV 17-1130-JPR, 2019 WL 134551, at *7 (C.D. Cal. Jan. 8, 2019) (alteration in <u>Alfred G.</u>).

The Additional Medical Evidence does not include any opinions regarding Plaintiff's impairments and their effects on her during the period up to the date last insured.  The only information in the Additional Medical Evidence regarding the period up to the date last insured comes from Plaintiff's self-report of her medical history.  <u>See</u> AR at 150 (listing Plaintiff's complaints and "history of present illness" at 9/21/16 examination (emphasis omitted)); AR at 135 (same for 4/12/17 examination); AR at 130 (same for 11/9/17 examination); AR at 126 (same for 4/12/18 examination); AR at 122 (same for 9/6/18 examination) (dkt. no. 11-4 at PageID #: 185, 170, 165, 161, 157).  These summaries of Plaintiff's self-reports about her medical history and conditions during the period up to the date last insured are repetitive of evidence that was presented to the ALJ.  <u>See, e.g.</u>, Exh. 29F, AR at 1238 (History of Present Illness section of Progress Note by John W. Bellatti, M.D., for Plaintiff's 4/11/14 appointment) (dkt. no. 14-1 at PageID #: 1288).  Thus, the Appeals Council correctly found that there was no "reasonable possibility" that the Additional Medical Evidence would have changed the ALJ Decision with regard to Plaintiff's SSDI application.  Because all three requirements of

19

§ 404.970(a)(5) must be met, and the Appeals Council correctly ruled that the Additional Medical Evidence did not meet the "reasonable probability," it is not necessary to address the other two requirements.  Because remand for reconsideration of the Additional Medical Evidence is not warranted as to Plaintiff's SSDI application, the portion of the ALJ's Decision denying Plaintiff's SSDI application is affirmed.

        Because Plaintiff's eligibility for SSI benefits is not restricted by her date last insured, the relevant period extends through the date of Decision.  See Wellington, 878 F.3d at 872.  The Additional Medical Evidence consists of DHS determinations based on the Physical Examination Reports by Dr. Wang for his examinations of Plaintiff on September 21, 2016, April 12, 2017, November 9, 2017, April 12, 2018, September 6, 2018.  [AR at 121-37, 148-52 (dkt. no. 11-4 at PageID #: 156-72, 183-87).]  Plaintiff argues "Dr. Wang's examinations and medical opinions showed a distinct worsening of both of [Plaintiff]'s hands and wrists."  [Opening Brief at 18 (citation omitted).]  The Additional Medical Evidence also notes the fact that Plaintiff was going to have surgery on her right hand later in 2018, which Plaintiff argues the ALJ was unaware of.  Id. at 1 (dkt. no. 11-3 at PageID #: 35); AR at 122 (noting surgery scheduled for 10/16/18) (dkt. no. 11-4 at PageID #: 157); see also Decision, AR at 23 ("On April 18, 2018, right

20

carpal tunnel syndrome surgery was discussed, but wrist surgery was deemed medically unwarranted, per Exhibit 34F.") (dkt. no. 11-3 at PageID #: 57).[12]   Plaintiff also emphasizes that Dr. Wang's opinions are "the only medical opinions from September 21, 2016 onward." [Opening Brief at 1 (citing 20 C.F.R. §§ 404.1527 & 416.927).]

        The medical opinions that the ALJ gave the greatest weight to were those of the state agency consulting physicians, to which the ALJ gave "significant weight."  See Decision, AR at 24 (citing Exhibits 10A, 11A, 14A, 15A) (dkt. no. 11-3 at PageID #: 58).  Exhibit 10A, the SSDI Initial DDE, was signed by N. Shibuya, M.D., on October 21, 2015.  AR at 282 (dkt. no. 11-5 at PageID #: 318); see also AR at 292 (dkt. no. 11-5 at PageID #: 328) (same for Exhibit 11A, the SSI Initial DDE).  Exhibit 15A, the SSDI Reconsideration DDE, was signed by M. Kuge, M.D., on September 8, 2016.  AR at 324 (dkt. no. 11-5

_____

[12] The language that the ALJ referred to appeared in the "History of Present Illness (HPI)" section of the notes from Plaintiff's April 18, 2018 office visit with Catherine Marquette, A.P.R.N., P.A.-C.  That section quotes the assessment from Plaintiff's earlier visit with her orthopedist.  [Exh. 34F, AR at 1372 (dkt. no. 14-2 at PageID #: 1423).]  Ms. Marquette stated Plaintiff was scheduled to see an orthopedist on May 18, 2018.  [Id.]
        The language that Ms. Marquette quoted originated in the "plan" section of the notes from Plaintiff's February 7, 2018 examination by Aimee Perreira, M.D.  [Exh. 37F, AR at 1527 (dkt. no. 14-3 at PageID #: 1579).]  Plaintiff saw Dr. Perreira on May 18, 2018.  [Id., AR at 1530-34 (dkt. no. 14-3 at PageID #: 1583-86).]

at PageID #: 360); see also AR at 307 (dkt. no. 11-5 at PageID #: 345) (same for Exhibit 14A, the SSI Reconsideration DDE).

The ALJ gave "limited weight" to the opinions of Dr. Taylor, a state agency physician, who examined Plaintiff on March 1, 2014, November 7, 2015, and March 5, 2016.  [Decision, AR at 25 (dkt. no. 11-3 at PageID #: 59); Exh. 16F, AR at 980-82, 961-63 (dkt. no. 13-2 at PageID #: 1026-28, 1007-09); Exh. 22F, AR at 1141-43 (dkt. no. 13-3 at PageID #: 1188-90).] The ALJ found that Dr. Taylor's opinions did "not reflect the evidence as a whole," in part because he evaluated Plaintiff prior to her knee reconstruction surgery in mid-March 2016, and prior to other treatments she received for her upper extremities.  Decision, AR at 25 (dkt. no. 11-3 at PageID #: 59); see also Exh. 25F, AR at 1161-70 (dkt. no. 13-3 at PageID #: 1208-17) (post-operative discharge report).

In contrast, Dr. Wang, another state agency physician, examined Plaintiff several times after Plaintiff's knee surgery and Plaintiff's treatments for her upper extremities. September 21, 2016, April 12, 2017, November 9, 2017, April 12, 2018, September 6, 2018.  [AR at 122-24, 126-28, 130-32, 135-37, 150-52 (dkt. no. 11-4 at PageID #: 157-59, 161-63, 165-67, 170-72, 185-87).]  In light of the fact that a major concern that the ALJ cited regarding Dr. Taylor's opinions is not a concern with Dr. Wang's opinions reflected in the Additional Medical

22

Evidence, there is a reasonable possibility that the ALJ would have given more weight to Dr. Wang's opinions reflected in the Additional Medical Evidence than the ALJ gave to Dr. Taylor's opinions.  In other words, there is a reasonable probability that the ALJ may have found Dr. Wang's opinions regarding Plaintiff's physical limitations more persuasive than the ALJ found Dr. Taylor's opinions to be.  Further, Dr. Wang's notes from his September 16, 2018 examination of Plaintiff state Plaintiff was scheduled for surgery on October 16, 2018 for her carpal tunnel syndrome on her right side.  [AR at 122 (dkt. no. 11-4 at PageID #: 157).]  Dr. Wang also reviewed Dr. Perreira's July 26, 2018 records.  [AR at 123 (dkt. no. 11-4 at PageID #: 158).]  This is consistent with records which were before the ALJ and reflected that: on February 7, 2018, Dr. Perreira spoke with Plaintiff about the possibility of surgery to address Plaintiff's carpal tunnel syndrome, but it was not warranted at the time; and, on May 18, 2018, Plaintiff reported that her carpal tunnel syndrome symptoms were getting worse, but Plaintiff elected to proceed with an injection and to have a follow-up appointment two months later.  See Exh. 37F, AR at 1527 (dkt. no. 14-3 at PageID #: 1579); id. at 1532-34 (dkt. no. 14-3 at PageID #: 1584-86).

The Social Security Administration regulations state, in pertinent part:

Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1)  Examining relationship.  Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.

. . . .

(3)  Supportability.  The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.  We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

(4)  Consistency.  Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

. . . .

20 C.F.R. § 404.1527.[13]  Because the Additional Medical Evidence indicates that Plaintiff's well-documented issues with her right wrist were getting worse, which would indicate greater limitations on Plaintiff's functioning, and in light of the applicable principles regarding the weight given to the opinions of examining physicians, this Court concludes there is a reasonable possibility that the outcome of the ALJ's Decision would have been different if the ALJ had considered the Additional Medical Evidence.  See § 416.1470(a)(5).  The Appeals Council erred when it ruled that the Additional Medical Evidence did not meet the reasonable possibility requirement.

However, the Appeals Council's ruling and the portion of the ALJ's Decision denying Plaintiff's SSI application will not be reversed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) ("We have long recognized that harmless error principles apply in the Social Security Act context." (quotation marks and citation omitted)).  The erroneous ruling regarding the reasonable possibility requirement would be harmless if the Appeals Council correctly found that Plaintiff failed to

---

[13] Section 404.1527 applies because Plaintiff filed her SSI application on April 2, 2015.  See 20 C.F.R. § 404.1527 (stating the section applies to claims filed before March 27, 2017, and 20 C.F.R. § 404.1520c applies to claims filed on after March 27, 2017).

establish either the good cause requirement or the requirement
that the additional evidence is new, material, and relates to
the period up to and before the date of the ALJ's Decision.  See
*supra* discussion of § 416.1470(a)(5), (b); Lowe, 2020 WL
2571482, at *12.  The only express ruling that the Appeals
Council made regarding the Additional Medical Evidence related
to the reasonable probability requirement.  See AR at 2 (dkt.
no. 11-3 at PageID #: 36).  Because there are no findings
regarding the other two requirements for this Court to review,[14]
there is no basis for this Court to conclude that the error
regarding the reasonable possibility requirement was harmless.
Therefore, the Appeals Council's erroneous ruling regarding the
reasonable possibility requirement requires remand for further
administrative proceedings.  See Taylor, 659 F.3d at 1233.  This
case is remanded to the Appeals Council to address whether
Plaintiff satisfied the good cause requirement and whether the
Additional Medical Evidence is new, material, and relates to the
period up to and before the date of the ALJ's Decision.  If the
Appeals Council determines that those two requirements are

---

[14] Plaintiff argues that, because the Appeals Council did
not issue her a notice pursuant to 20 C.F.R. § 404.970(c) and 20
C.F.R. § 416.1470(c), the council must have found that she had
good cause for her late submission of the Additional Medical
Evidence.  See, e.g., 20 C.F.R. § 404.970(c) (quoted *supra*);
*supra* footnote 11 (noting that 20 C.F.R. § 416.1470(c) is
substantively similar to § 404.970(c)).  This Court declines to
make such an assumption.

satisfied, the council must consider the Additional Medical Evidence and reconsider whether to review the remaining portion of the ALJ's Decision, *i.e.*, the portion of the Decision denying Plaintiff's SSI application.

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal of the Administrative Law Judge's September 6, 2018 Decision is HEREBY GRANTED IN PART AND DENIED IN PART.  Plaintiff's Appeal is GRANTED, insofar as the case is REMANDED to the Appeals Council for further proceedings regarding the Additional Medical Evidence and, if appropriate, Plaintiff's application for supplemental security income.  Plaintiff's Appeal is DENIED, insofar as the Appeals Council's refusal to consider the Additional Medical Evidence and the ALJ's Decision are affirmed as to the denial of Plaintiff's application for social security disability insurance benefits.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case on **March 1, 2021**, unless Plaintiff files a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, February 12, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DENISE MATIAS VS. ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY; CV 19-00575 LEK-KJM; ORDER:  GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION IN PART; AND REMANDING THE CASE IN PART FOR FURTHER ADMINISTRATIVE PROCEEDINGS REGARDING PLAINTIFF'S APPLICATION FOR SUPPLEMENTAL SECURITY INCOME